## UNFAIR TRADE AND COMPETITION.

[Franklin County Common Pleas Court.]

THE IRONSIDES COMPANY v. THE IRONSIDES CHEMICAL COMPANY.

Decided, June 9, 1903,

*Trade-Marks—Unfair Competition—Methods Calculated to Deceive—Generic and Other Words in Trade-Mark—Registration of Trade-Mark.*

1. It is manifestly unfair competition to adopt a name almost identical with that of an established competitor, and manufacture and sell the same line of goods, in the same·city, and in almost the same locality. with an appropriation of the marks the plaintiff uses upon his goods, and the practical copying of his advertising.
2. An injunction against such competition will include the use of the word "Ironsides," but will not include the words "shield and filler."

BIGGER, J.

This is an action brought by the plaintiff to restrain the defendant from the use of what is called a trade-mark and from the use in the name of its partnership business of the word "Ironsides." It is also sought to restrain the defendant partnership from imitating the barrel markings of plaintiff's goods, and from using its stencil marks and imitating its literature.

The case has been submitted to the court upon the evidence. I will not undertake to state the facts of the case at length, but only briefly my conclusions and the reasons therefor After a careful examination of the evidence in the case, I am satisfied that the plaintiff is entitled to relief, but not entitled to the extent asked for. It is difficult to escape the conclusion, upon the evidence, that there has been an attempt here on the part of the defendant company to engage in unfair trade or competition. The whole business and the name under which it is conducted, and the manner of conducting it, make but one conclusion, it seems to me, possible, and that is whatever the intention may have been, that it is perfectly apparent that the conduct of this defendant's business under a name almost identical, at almost identically the same

place in the same city, manufacturing and selling the same goods under the same name with an almost wholesale appropriation of the marks the plaintiff uses upon its goods, and the practical copying of its advertising matter can only result in deception and unfair trade and competition.

As to the word "Ironsides" there is no reason why the defendant company should adopt the word Ironsides in conducting its business. The plaintiff has established a business and it appears has spent much money in establishing its business under the name of "Ironsides." There is nothing in this name which indicates at all the nature of the business and therefore no reason why the defendant company should adopt it. There is also no reason why the defendant company should practically adopt the stencil marks and the letter heads and other literature of the plaintiff company. Taking it all in all it is manifestly unfair trade and competition and the defendant will be restrained as prayed for except as to the use of the words "shield and filler." Upon that point I think the plaintiff has not established its right to the exclusive use of these terms as trade-marks.

The fact of the registration seems to be of no avail to the plaintiff. Hopkins on Unfair Trade says, at Section 20:

"With the solitary exception of the California case of *Whittier* v. *Dietz,* it has nowhere been held in the United States that the right to a trade-mark is created by registration. * * * So that registration under the act of Congress, says the authority, is in no sense a means of acquiring a right to a trade-mark."

The same authority at Section 97 quotes the language of Judge Hawley, "that registration under the act of 1881 is of but little if any value except for the purpose of making a permanent record of the date of adoption, and the use of the trade-mark, or in cases where it is necessary to give jurisdiction to the United States Courts." And the authority says that "registration is practically useless because of the failure of Congress to cover in the provisions of the act of 1881 trade-marks employed in commerce between the states."

The burden is upon the plaintiff to establish the fact that it originated the use of these terms in the connection in which they

are used, and upon the evidence I do not think that fact has been established.

It seems to be an established principle that generic terms can not be appropriated as trade-marks and that names which are descriptive of the article of trade, of its qualities or characteristics, can not thus be appropriated.

Now the word filler as defined by the dictionaries means "anything that fills." It has been used only in connection with other words in this case, such as wire-rope filler. It is therefore only the substance for wire ropes which fills and the same may be said of the word shield. It is a generic term which means a protection. I have carefully examined the authorities upon this subject and I am of opinion that the plaintiff has not established its right to the exclusive use of these terms in its business. But it has established the right clearly to relief against unfair competition. The defendant will be enjoined from using the word "Ironsides" or any name similar to it as a part of its business name. It will also be enjoined from using the stencil marks which are practically identical upon the barrels and packages containing its product. It will also be enjoined from copying, as it sems to have done, the form of literature used by the plaintiff and from copying and imitating the advertising literature of the plaintiff company; and the defendant will also be enjoined from in any way interfering with the employes of the plaintiff company and from attempting to discover in this way the trade secrets of the plaintiff company.

*Emmet Tompkins,* for plaintiff.

*D. J. Ryan* and *G. D. Jones,* for defendant.